UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY G.,[1]<br>Plaintiff,<br>v.<br>FRANK BISIGNANO,<br>Acting Commissioner of the Social Security Administration,<br>Defendant. | Case No.: 25cv2254-RBM(LR)<br>**REPORT AND RECOMMENDATION REGARDING JOINT MOTION FOR JUDICIAL REVIEW**<br>**[ECF No. 13]** |

This Report and Recommendation is submitted to the Honorable Ruth Bermudez Montenegro, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California. On August 29, 2025, Anthony Lee G. ("Plaintiff") filed a Complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security ("Defendant") denying Plaintiff's application for social security disability benefits and supplemental security income benefits. (ECF No. 1.)

[1] Pursuant to Civil Local Rule 7.1(e)(6)(b), the Court's opinions in Social Security cases filed under 42 U.S.C. § 405(g) "refer to any non-government parties by using only their first name and last initial."

Now pending before the Court is the parties' "Joint Motion for Judicial Review" seeking judicial review. (ECF No. 13 ("J. Mot.").) For the reasons set forth below, the Court **RECOMMENDS** that the Commissioner's decision be **REVERSED**, and that judgment be entered reversing the decision of the Commissioner and remanding this matter for further administrative proceedings.

## I. PROCEDURAL BACKGROUND

On September 9, 2022, Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act and supplemental security income benefits under Title XVI of the Social Security Act, alleging disability beginning on January 1, 2017. (ECF No. 9 ("AR")[2] at 17, 70–71, 232–43, 246–53.) After his application was denied initially and upon reconsideration, Plaintiff requested an administrative hearing before an administrative law judge ("ALJ"). (Id. at 158–59.) An administrative hearing was held on May 16, 2024. (Id. at 33–51.) Plaintiff telephonically appeared at the hearing with counsel, and testimony was taken from him and a vocational expert ("VE"). (Id.)

On September 24, 2024, the ALJ issued a written decision finding that Plaintiff had not been under a disability, as defined in the Social Security Act, from January 1, 2017, through the date of the decision. (Id. at 17–28.) The ALJ's decision became the final decision of the Commissioner on July 3, 2025, when the appeals council denied Plaintiff's request for review. (Id. at 1–6.) This timely civil action followed. (See ECF No. 1.)

/ / /

/ / /

---

[2] "AR" refers to the Administrative Record filed on December 10, 2025. (ECF No. 9.) The Court's citations to the AR in this Order are to the page numbers listed on the original document rather than the page numbers designated by the Court's Case Management/Electronic Case Filing System ("CM/ECF"). For all other documents, the Court's citations are to the page numbers affixed by CM/ECF.

## II. SUMMARY OF THE ALJ'S FINDINGS

The ALJ followed the Commissioner's five-step sequential evaluation process. See 20 C.F.R. §§ 404.1520, 416.920.[3] At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 1, 2017. (AR at 19.) At step two, the ALJ found that Plaintiff had the following severe impairments: "low back pain without sciatica; complex fracture of the upper extremity; depression; schizophrenia; and substance abuse." (Id. at 20.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Commissioner's Listing of Impairments. (Id.)

Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he: can frequently climb ladders, ropes, and scaffolds; can frequently crawl, finger and feel bilaterally; can perform simple job instructions, simple tasks, and simple, unskilled work; can interact appropriately with coworkers and supervisors but cannot perform team work or collaborative work; and should not have interaction with the public. He can respond appropriately to supervision, routine work settings and situations and changes; he can appropriately ask questions, use judgment and make decisions.

(Id. at 22.)

At step four, the ALJ found that Plaintiff could not perform any past relevant work. (Id. at 26.) At step five, based on the VE testimony, the ALJ found that a hypothetical person with Plaintiff's vocational profile and RFC could perform the requirements of occupations that existed in significant numbers in the national economy. (Id. at 27.) The ALJ then found that Plaintiff was not disabled from January 1, 2017, through the date of

---

[3] The disability insurance benefits (DIB) and supplemental security income (SSI) regulations relevant to this case are virtually identical; therefore, only the DIB regulations will be cited in the remainder of this order. Parallel SSI regulations are found in 20 C.F.R. §§ 416.900–416.999 and correspond with the last digits of the DIB cite (e.g., 20 C.F.R. § 404.1520 corresponds with 20 C.F.R. § 416.920).

the ALJ's decision. (Id. at 28.)

## III. DISPUTED ISSUES

As reflected in the parties' Joint Motion, Plaintiff is raising the following issues as the grounds for reversal and remand: (1) whether the ALJ erred in addressing paragraph C of the Adult Mental Listings; (2) whether the ALJ failed to address the combination of Plaintiff's arm, hand, leg, and feet impairments in the RFC; and (3) whether the ALJ provided clear and convincing reasons for rejecting Plaintiff's testimony about the severity of his symptoms. (J. Mot. at 3.)

## IV. STANDARD OF REVIEW

Section 405(g) of the Social Security Act allows unsuccessful applicants to seek judicial review of the Commissioner's final decision. 42 U.S.C. § 405(g). The scope of judicial review is limited, and the denial of benefits will not be disturbed if it is supported by substantial evidence in the record and contains no legal error. See id.; Buck v. Berryhill, 869 F.3d 1040, 1048 (9th Cir. 2017). "Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (quoting Desrosiers v. Sec'y Health & Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988)). In determining whether the Commissioner's decision is supported by substantial evidence, a reviewing court "must assess the entire record, weighing the evidence both supporting and detracting from the agency's conclusion," and "may not reweigh the evidence or substitute [its] judgment for that of the ALJ." Ahearn v. Saul, 988 F.3d 1111, 1115 (9th Cir. 2021). Where the evidence can be interpreted in more than one way, the court must uphold the ALJ's decision. Id. at 1115–16; Attmore v. Colvin, 827 F.3d 872, 875 (9th Cir. 2016). The court may consider "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [he or she] did not rely." Revels, 874 F.3d at 654 (internal quotation omitted).

/ / /

## V. RELEVANT MEDICAL RECORDS AND TESTIMONY

### A. Examination Findings

#### 1. Vista Community Clinic examinations

On April 17, 2018, Plaintiff established care at the Vista Community Clinic ("VCC") and reported to Nurse Practitioner ("N.P.") Paloma A. Garza that he sustained an orbital fracture in 1994 that required facial reconstruction surgery. (AR at 507.) Plaintiff also reported methamphetamine use, and N.P. Garza diagnosed him with moderate methamphetamine use disorder. (Id. at 507, 510.) Plaintiff further complained of severe back pain, and N.P. Garza noted that Plaintiff grimaced as he moved about the room, had lumbar spine tenderness, and a moderately reduced range of motion. (Id. at 509.) N.P. Garza also observed that Plaintiff displayed "blunted affect" and at times appeared to "drift off to sleep" in the middle of sentences. (Id.) On October 9, 2018, Plaintiff reported to N.P. Jennifer S. Kessler and requested a completed GRE form, citing a 2010 car accident that crushed his hands. (Id. at 500.) Plaintiff reported undergoing surgical hand repair with pin placement and claimed ongoing limitations with his dexterity, fine motor skills, and ability to grip and form a fist. (Id.) On November 2, 2018, N.P. Kessler completed Plaintiff's GRE form recommending "light duty to avoid work requiring fine motor skills of hands." (Id. at 498.) N.P. Kessler noted decreased flexion of Plaintiff's left middle finger and both index fingers but found his grip strength to be equal and strong. (Id.)

In 2019, Plaintiff sought treatment at the VCC on multiple occasions. (See id. at 473–497.) During several visits, Plaintiff complained of toe pain, back pain, and numbness in his extremities; however, an X-ray revealed no fractures, examinations showed normal extremities, and providers advised Plaintiff to exercise. (Id. at 479–80, 484–85, 487, 489–90, 493.) In October and November 2019, Plaintiff reported that, because of his injuries in 1994 and 2010, he suffered from balance and hand issues. (Id. at 473, 487.) In November 2019, Plaintiff complained of knee pain after a bike fall, and Dr. Enrique Boquin noted a minor abrasion with some swelling. (Id. at 473, 475.)

Throughout the year, providers also consistently noted appropriate affect, judgment, and insight, although Plaintiff reported anxiety and depression in October 2019. (Id. at 475, 479, 480, 484, 489, 494.)

During several additional visits to the VCC in 2020, Plaintiff complained of anxiety, depression, and insomnia. (Id. at 452, 456, 470.) On March 18, 2020, Plaintiff reported prior diagnoses of bipolar and paranoid schizophrenia in 1990. (Id. at 468.) N.P. Rory M. Skopek noted minimal general anxiety disorder and referred Plaintiff to psychiatry, but Plaintiff failed to attend the appointment. (Id. at 468, 471.) On May 8, 2020, Plaintiff claimed that since 2010, he suffered from muscle cramping, limiting his ability to write. (Id. at 464.) On July 28, 2020, N.P. Ingrid F. Dekkers-O'Hare noted Plaintiff was negative for dizziness, extremity weakness, gait disturbance, memory impairment, and extremity numbness. (Id. at 452.) During an August 4, 2020, visit, Plaintiff reported maintaining moderate activity, exercising daily by biking or walking. (Id. at 447.)

On May 21, 2021, Plaintiff complained of continued pain in his second right toe and joint pain. (Id. at 437–38.) N.P. Nicholas D. Kahl found hammertoe on Plaintiff's second right toe and referred him to podiatry, but Plaintiff did not attend. (Id. at 439.) On October 18, 2021, Plaintiff reported not taking any medication or receiving psychiatric care, but reported prior diagnoses of substance abuse disorder, paranoid schizophrenia, and manic depression along with symptoms of depression, anxiety, and insomnia. (Id. at 430, 432.) Plaintiff's screening reflected severe generalized anxiety disorder and moderately severe depression. (Id. at 430–31.) Dr. Dao Tran assessed Plaintiff for bipolar affective disorder and paranoid schizophrenia and referred him to psychiatry, but Plaintiff did not attend. (Id. at 433.)

On March 30, 2022, Plaintiff reported taking Prozac and Abilify and receiving care at Exodus Recovery Center for bipolar and paranoid schizophrenia. (Id. at 425.) Plaintiff complained of anxiety and depression, and Dr. Dao Tran noted moderately severe depression. (Id. at 425–26.) On May 31, 2022, Plaintiff complained of back,

neck, and joint pain, stiffness, swelling, muscle weakness, and hand numbness, and reported limitations from his 2010 hand injury. (Id. at 420.) However, he retained the ability to lift weight. (Id.) Dr. Tran found that Plaintiff had stiffness of the fingers on both hands, reduced range of motion, weakness, and bunions on both feet, but that his extremities were otherwise normal. (Id. at 422.) Dr. Tran noted joint deformities on both hands, referred Plaintiff to podiatry—which Plaintiff failed to attend—and recommended a hand x-ray. (Id.) On August 30, 2022, Plaintiff reported no longer taking Prozac or Abilify, though screening reflected moderate depression and anxiety, which he reported affected his ability to work and interact with others. (See id. at 414–16.)

On December 12, 2023, Plaintiff reported to Dr. Tran that he stopped treatment at Exodus Recovery Center and was no longer taking medication. (Id. at 578.) Dr. Tran noted mild depression and mild generalized anxiety disorder, and Dr. Tran prescribed Abilify and Prozac. (Id. at 579, 581.) Plaintiff also complained about gait disturbance and claimed that he could not perform work involving heavy lifting or repetitive hand movement due to weakness and numbness. (Id. at 578, 580.) Dr. Tran found issues with the flexion of his bilateral fourth and fifth digits but observed otherwise normal extremities. (Id. at 580.)

On March 29, 2024, Dr. Monica M. Vidal examined Plaintiff for a knee infection following a bike fall. (Id. at 573.) Plaintiff reported refusing surgery at TriCity Medical Center and that he was taking antibiotics. (Id.) Plaintiff complained of dizziness, weakness, numbness in an extremity, and bruising, and Dr. Vidal diagnosed staphylococcal arthritis in Plaintiff's knee. (Id. at 575–76.) On April 8, 2024, Plaintiff reported continued joint pain, stiffness, and swelling but stated he could walk and bike. (Id. at 568–69.) Dr. Diana O. Ponsford observed a healing wound with mild swelling and significant improvement. (Id. at 570.)

**2. Mental status evaluation**

On May 8, 2023, Plaintiff underwent a mental status evaluation with licensed clinical psychologist Aparna Dixit at Alliance Assessments. (See id. at 522–26.)

Plaintiff reported suffering from anxiety, depression, and mood swings, ranging from anger and rage attacks to euphoria and impulsiveness followed by depression. (Id. at 523.) He reported self-medicating with methamphetamine and began "hearing voices" in his mid-teens, which became stronger over time and eventually started commanding him to harm himself and others. (Id.) He claimed he last heard these voices a few years ago but still suffers from random manic episodes. (Id. at 524.) Plaintiff also reported intermittent psychiatric treatment since childhood, including use of Prozac, which he stated reduced his depression and agitation. (Id.) He further reported multiple suicide attempts and being psychiatrically hospitalized. (Id.) He also reported not engaging in psychotherapy since 2014 because it increased his anger. (Id.) He claimed that he rarely leaves his encampment, does not like to be among the public, avoids crowded places because they trigger his anxiety and anger, and "wants nothing to do with people." (Id. 524–25.) Despite these limitations, he stated that he could maintain personal hygiene and perform basic chores, but he struggled with time management and task completion. (Id.)

Dr. Dixit noted that Plaintiff appeared irritable at first but became congenial over time, had fair insight and judgment, and was a reliable historian. (Id. at 523, 525.) She found no evidence of psychotic thought disorder but diagnosed attention deficit/hyperactivity disorder ("ADHD"), unspecified bipolar and related disorder, unspecified anxiety disorder, moderate methamphetamine use disorder (in remission), and antisocial personality disorder. (Id. at 526.) Intellectually, Plaintiff demonstrated intact memory, performed simple mathematical calculations, and had the capacity to follow multi-step instructions. (Id. at 525.) Regarding work-related ability, Dr. Dixit determined that Plaintiff had mild to moderate impairments in his ability to remember and carry out detailed, complex tasks and in maintaining pace and persistence over two-hour increments. (Id. at 526.) She found no limitation with maintaining attention and concentration or with engaging in repetitive cognitive activities. (Id.) However, she concluded Plaintiff would have marked difficulty in dealing with the public and mild to moderate difficulty interacting with and relating to co-workers and supervisors. (Id.)

**3. Other examinations**

On February 9 and May 9, 2022, Plaintiff established care at Exodus Treatment Center and reported to Dr. Jaga Glassman and N.P. Melody James. (Id. at 392–407.) Plaintiff claimed he became depressed without medication and reported auditory hallucinations, unstable moods, inability to care for himself, and needing medication to "level [him] out." (See id. at 394, 402–04.) In February 2022, Dr. Glassman diagnosed Plaintiff with bipolar disorder, methamphetamine dependence, and antisocial personality disorder after observing that his mood was elevated and affect was full. (Id. at 401, 404.) Dr. Glassman prescribed Plaintiff Prozac and Abilify. (Id. at 405.) In May 2022, N.P. James noted that Plaintiff's mood, affect, insight, and judgment were normal. (Id. at 394, 396).

Plaintiff also received a functional assessment from Dr. Pamela Ombres and Dr. Kawasaki in September 2023. (See id. at 104–13.) After reviewing the evidence in the record, Dr. Ombres opined that Plaintiff could lift or carry twenty pounds occasionally and ten pounds frequently and could stand, walk, and sit for six hours in an eight-hour workday. (Id. at 107.) She found no postural, manipulative, or environmental limitations, except for limiting fingering and feeling. (Id. at 107–08.) Dr. Ombres and Dr. Kawasaki determined that Plaintiff's limitations were not severe enough to restrict him from working. (See id. at 110–12.)

**4. Consultative Orthopedic evaluation**

On August 31, 2023, Plaintiff underwent an orthopedic consultative examination with Dr. Juliane Tran. (See id. at 532–539.) Plaintiff reported suffering from multiple motor vehicle accidents throughout his life, causing joint and hand pain, fractures, back pain radiating to the right buttock, numbness, and other symptoms. (Id. at 532–33.) He also reported knee buckling, a spinal curvature, numbness in his right thigh and toes, an ankle fracture, and difficulty with prolonged standing, walking, and daily activities. (Id.)

Dr. Tran observed that Plaintiff ambulated without an assistive device, with normal gait and pace, and demonstrated normal balance and coordination. (Id. at 534.) Dr. Tran

noted that Plaintiff could perform toe walking with some discomfort in his right toes and tandem walking without any complaint. (Id.) She further noted pain in the lumbar spine and issues with Plaintiff's hands and feet, but otherwise normal hips, knees, ankles, shoulders, elbows, and wrists. (See id. at 535–37.) She observed reduced finger flexion, slightly diminished grip strength, and signs consistent with possible peripheral neuropathy, as well as tenderness and sensory abnormalities in the right foot. (Id. at 537–38.) Dr. Tran opined that Plaintiff could lift up to twenty pounds occasionally and ten pounds frequently; stand or walk for six hours in an eight-hour workday; and sit without limitation. (Id. at 538.) She found no postural, manipulative, or environmental limitations, except limiting handling to frequent. (Id.)

On August 31, 2023, as part of the consultative examination, radiologist Lawrence Resnick opined that imaging showed mild degenerative changes in the left hand and lumbar spine, mild scoliosis, and deformities in the right foot, including hammertoes and hallux valgus. (Id. at 530–31.) Dr. Resnick further observed no fractures or systemic arthritis. (Id. at 531.)

**B. Plaintiff's Testimony and Statements**

At the administrative hearing, Plaintiff testified that he lived with his fiancée and dog, had a driver's license, was unemployed, and last worked in 2018 as a full-time car detailer. (Id. at 38–39, 42–43.) He estimated he could lift eight pounds with his right hand and "a little bit less than that" with his left. (Id. at 39.) He testified that he could only stand or walk for ten to fifteen minutes given a recent bike fall which resulted in a left knee injury, caused cellulitis, and required use of a knee brace. (See id. at 39–40, 46–47.) He stated that, since the injury, he had difficulty bending down and standing up. (Id. at 40.) He further claimed that he could only sit for twenty to thirty minutes at a time due to his ADHD. (Id. at 39.) He also testified that he had a good memory most of the time but had trouble concentrating, paying attention, and staying focused. (Id. at 40–41.)

Plaintiff testified that he had trouble using his hands for picking up and holding items and that his arms sometimes got numb and weak to the point where paper became

too heavy. (Id. at 42, 45–46.) He stated that although he could tie his shoelaces normally, he needed more time than before. (Id. at 42.) Plaintiff also stated that he could do chores like laundry "in spurts" but would stop when his hands or knees started to hurt. (Id. at 43–44.) He further testified that he could care for his own hygiene but needed assistance washing his back and preferred bathing to showering. (Id. at 44.) He further stated that he did not take pain medication and had declined hand surgery for fear of undesirable side effects. (Id. at 41, 47.) Plaintiff also testified that he experienced "eerie" feelings that something was wrong and claimed that he used to hear voices and sometimes still hears birds, mice, and rats talk to him. (Id. at 45.) He also stated that although he got along with and liked everyone, he was not liked by everyone, had difficulty interacting with people sometimes, and often waited on others to initiate interactions out of fear of rejection. (Id. at 41, 46–47.) He also testified that he took psychiatric medication intermittently to mitigate depressive episodes and last took it six months before the hearing. (Id. at 42.)

## VI. DISCUSSION

### A. The ALJ's Step Three Analysis Failed to Adequately Explain his Paragraph C Determination

#### 1. Parties' arguments

Plaintiff argues that the ALJ failed to properly address the paragraph C criteria for mental impairments under Listings 12.03, 12.04, and 12.06 at step three. (See J. Mot. at 3–5.) In addressing the paragraph C criteria, Plaintiff contends that the ALJ offered only a blanket recitation of the law and a conclusion, without analyzing medical evidence or explaining how that evidence relates to the paragraph C criteria. (Id.) Accordingly, Plaintiff argues that the ALJ's finding is unsupported by substantial evidence. (Id. at 5.)

Defendant argues that, although the ALJ did not discuss the medical evidence in detail in the paragraph C section of the opinion, the ALJ's conclusion that Plaintiff does not meet the paragraph C criteria for Listings 12.03, 12.04, or 12.06 is clear from the paragraph B discussion and the opinion as a whole. (See id. at 6–8.) Defendant further

contends that any error at step three is harmless because the record does not show that Plaintiff cannot adapt to changes in his environment or to demands outside his daily routine. (Id. at 6.)

**2. Applicable law**

At step three, the ALJ considers whether one or more of the claimant's impairments meets or equals a listed impairment identified in 20 C.F.R. Pt. 404, Subpart P, Appendix 1. See 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant has an impairment or combination of impairments that meets or equals a listed impairment, the claimant is presumed disabled. See Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001). "An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." Jessica B. v. Comm'r of Soc. Sec., No. 1:18-CV-3074-TOR, 2019 WL 850954, at *4 (E.D. Wash. Jan. 30, 2019) (quoting Lewis, 236 F.3d at 512) (internal quotations omitted). "An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment," and "[a] boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." Lewis, 236 F.3d at 512 (citing Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990)).

"The paragraph C criteria are an alternative to the paragraph B criteria under listings 12.02, 12.03. 12.04, 12.06, and 12.15." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(G)(1). "To satisfy the paragraph C criteria, a claimant must show that [his] mental impairment(s) has existed for at least two years, and that (1) [he] relied 'on an ongoing basis, upon medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s), to diminish the symptoms and signs of [his] mental disorder,' and (2) despite [his] diminished symptoms and signs of [his] mental disorder, [he] has achieved only 'marginal adjustment,' meaning 'minimal capacity to adapt to changes in [his] environment or to demands that are not already part of [his] daily life.'" Jessica B., 2019 WL 850954, at *5 (quoting id. §12.00(G)(2)(b)–(c)).

/ / /

**3. Analysis**

The ALJ determined at step three that the severity of Plaintiff's mental impairments do not meet or medically equal the criteria listings 12.03 (schizophrenia spectrum and other psychotic disorders), 12.04 (depressive, bipolar and related disorders), and 12.06 (anxiety and obsessive-compulsive disorders). (AR at 21.)

Regarding the "paragraph C" criteria, the ALJ stated:

> The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. In order to meet the level of severity described in Sections12.03C, 12.04C and 12.06C, the claimant must have a "serious and persistent" mental disorder, that is, the claimant must have a medically documented history of the existence of the disorder over a period of at least 2 years. In addition, there must be evidence of both: medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder; and marginal adjustment, that is the claimant has minimal capacity to adapt to changes in their environment or to demands that are not already part of their daily life. In this case, the record fails to document the existence of any of these criteria.

(Id. at 22.)

In reaching the finding that Plaintiff failed to meet the paragraph C criteria with respect to the relevant listings, the ALJ failed to reference or discuss any medical evidence in the record. (See generally id. at 21–22.) Instead, the ALJ repeated the regulatory standard and then issued a boilerplate conclusion without any further analysis. (Id.) "This is precisely the type of conclusory and boilerplate language that the Ninth Circuit has repeatedly cautioned against." Jennifer A. v. O'Malley, No. 23-cv-326-GPC(LR), 2024 WL 400183, at *9 (S.D. Cal. Feb. 2, 2024) (citing Lewis, 236 F.3d at 512; Marcia, 900 F.2d at 176). The decision does not identify which of the C1 or C2 criteria the ALJ found unsatisfied, or the basis for that conclusion, and therefore fails to provide the reasoning required at step three. See Marcia, 900 F.2d at 176 (providing that, at step three, the ALJ is required to "adequately [explain] his evaluation of alternative tests and the combined effects of the impairments."); Gonzalez v. Sullivan, 914 F.2d

1197, 1200 (9th Cir. 1990) (finding that the ALJ must provide sufficient "factual foundations" upon which "a reviewing court may [understand] the basis for the decision."). When an ALJ combines boilerplate paragraph C language with a failure to meaningfully engage the medical record, a reviewing court cannot meaningfully evaluate whether the finding is supported by substantial evidence. District courts in the Ninth Circuit have therefore routinely held that such an omission is an independent basis for remand. See, e.g., Stites v. Comm'r of Soc. Sec. Admin., No. 3:25-cv-00009-CAB-SBC, 2025 WL 3471318, at *3 (S.D. Cal. Dec. 3, 2025) (finding that, because the ALJ's paragraph C discussion was "devoid of any analysis of Plaintiff's treatment history," the court could not meaningfully evaluate whether the ALJ's finding was supported by substantial evidence); Jennifer A., 2024 WL 400183, at *9; Jamie S. v. Kijakazi, No. 2:21-cv-00084-SMJ, 2022 WL 1491668, at *6 (E.D. Wash. May 11, 2022) ("The Court therefore cannot meaningfully evaluate whether the ALJ's finding is supported by substantial evidence, and the Court will remand this matter with instructions to reevaluate whether [p]laintiff's mental impairments establish the paragraph C criteria for Listings 12.04 and 12.06."); Katherine M. v. Kijakazi, No. 21-cv-01207-JST, 2022 WL 19975282, at *7 (N.D. Cal. Nov. 23, 2022) (quoting J.A. v. Kijakazi, No. 20-cv-07142-VKD, 2022 WL 2181693, at *14 (N.D. Cal. June 16, 2022)) ("the ALJ's failure to explain this conclusion 'leaves the Court to guess why the . . . record was not sufficient to satisfy C1 and C2'").

Defendant contends that, although the ALJ did not evaluate Plaintiff's mental health treatment in the paragraph C discussion, the ALJ's paragraph B findings and "well-supported analysis" elsewhere in the decision provide enough support for the paragraph C determination. (See J. Mot. at 6–8 (citing Kaufmann v. Kijakazi, 32 F.4th 843, 851 (9th Cir. 2022); Tahnee M. v. Kijakazi, No. 22-cv-00257-BEN-JLB, 2023 WL 4624698, at *21 (S.D. Cal. July 12, 2023)).) The Court disagrees, and Defendant's reliance on Tahnee is misplaced. In Tahnee, the court concluded that it could meaningfully review the paragraph C finding, despite its boilerplate language, because

the record as a whole reasonably supported the conclusion that the claimant had achieved more than a marginal adjustment. See 2023 WL 4624698, at *21. Here, the ALJ cited normal mental examinations and daily activities in the context of paragraph B and the RFC, which focus on functional limitations in the four mental domains and overall functional capacity for work. (See AR at 21, 23–26.) Without any explanation tying the paragraph B and RFC discussion to the C1 and C2 requirements, the Court cannot meaningfully evaluate the ALJ's paragraph C finding. See Stites v. Comm'r of Soc. Sec. Admin., No. 3:25-cv-00009-CAB-SBC, 2026 WL 1013510, at *2 (S.D. Cal. Apr. 14, 2026) ("The Court . . . cannot, meaningfully evaluate whether the ALJ's finding as to the [paragraph C] criterion is supported by substantial evidence by simply looking to the evidence supporting the ALJ's paragraph B analysis."); Burger v. Comm'r of Soc. Sec. Admin., No. CV-25-00075-TUC-AAM (JR), 2025 WL 3965304, at *7 (D. Ariz. Nov. 25, 2025) ("[T]he ALJ's discussion of the 'paragraph B' criteria also does not provide the necessary factual foundation upon which her conclusion regarding the 'paragraph C' criteria could be discerned as did not she (sic) discuss any of the 'paragraph C' criteria specifically when evaluating listings 12.03, 12.04, and 12.06."); Martinez v. Comm'r of Soc. Sec. Admin., No. CV-22-0054-TUC-JR, 2023 WL 5346033, at *7 (D. Ariz. Aug. 21, 2023) (explaining that the discussion and "medical evidence that is examined is different for the paragraph B and C criteria") (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(G)(2)(b)–(c)); Jessica B., 2019 WL 850954, at *5 ("Here . . . the ALJ selectively discussed the medical evidence only as it related to the paragraph B criteria. The court concludes that the ALJ's limited summary of the medical record, in addition to his specific findings relating to the paragraph B criteria, do not provide the necessary factual support for his conclusion that Plaintiff also failed to satisfy the paragraph C criteria.") The Court therefore lacks a basis to meaningfully review the ALJ's paragraph C determination.

Defendant also asserts that Plaintiff does not satisfy the requirements of C2 because the record does not show that he "cannot adapt to changes in his environment or

to demands that are not already part of [his] daily life," pointing to the ALJ's paragraph B discussion of normal mental status examinations and Plaintiff's ability to perform chores such as laundry and grocery shopping. (J. Mot. at 6.) However, courts have explained that such arguments "highlight[] the problem posed by the lack of any reasoning in the ALJ's decision as to paragraph C requirements in the first instance." Jennifer A., 2024 WL 400183, at *10; see also Daniel Z. v. Bisignano, No. 1:26-cv-00779-SKO, 2026 WL 2043179, at *6 (E.D. Cal. July 15, 2026). Without any explanation of how normal examinations or routine chores bear on Plaintiff's ability to adapt to changes or whether such changes would exacerbate his symptoms, the Court cannot treat this evidence as establishing that C2 is not met. See Plas v. Comm'r of Soc. Sec. Admin., No. CV 20-00286-TUC-DCB (LAB), 2021 WL 3668380, at *6 (D. Ariz. June 22, 2021) ("Without more, the court cannot conclude that the ALJ thought [claimant's] 'normal mental status with minimal treatment' was evidence that he has more than 'minimal capacity to adapt to changes in [his] environment or to demands that are not already part of his daily life.'") (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(G)(2)), report and recommendation adopted, 2021 WL 3163790 (D. Ariz. July 27, 2021).

Accordingly, the Court concludes that the ALJ's failure to explain his paragraph C finding adequately renders it unsupported by substantial evidence, and the ALJ, therefore, erred at step three. Because meeting the Paragraph C criteria could result in a determination that Plaintiff meets a listed impairment at step three, remand for clarification and further record development as to these criteria is warranted so that the ALJ can articulate "'precisely what was decided and why.'" Lisa O. L. v. Kijakazi, No. 20-CV-02865-RMI, 2022 WL 612803, at *8 (N.D. Cal. Mar. 1, 2022) (quoting Thresher v. Astrue, 283 F. App'x 473, 474–75 (9th Cir. 2008)). Accordingly, the Court **RECOMMENDS** that this case be remanded for further development of the record as to

whether Plaintiff meets the paragraph C requirements of Listings 12.03, 12.04, and 12.06.[4]

**B. The ALJ's RFC Assessment Failed to Address Plaintiff's Nonsevere Foot Impairments in Combination with His Severe Hand Impairment**

**1. Parties' arguments**

Plaintiff argues that the ALJ improperly evaluated his RFC by failing to consider the combined effects of upper- and lower-extremity physical impairments and by cherry-picking the record. (J. Mot. at 8–9.) Specifically, Plaintiff contends that the ALJ failed to address his "arm, hand, leg and feet limitations in the RFC in combination." (Id. at 9.) Plaintiff asserts that the ALJ overlooked evidence of his inability to grip, hold, and secure objects, as well as evidence of an abnormal and deformed foot that he claims caused repeated falls. (Id.) Plaintiff therefore argues that the ALJ's findings are not supported by substantial evidence. (Id.)

Defendant responds that the ALJ properly evaluated Plaintiff's combination of impairments in the RFC determination. (See id. at 10–11.) Defendant argues that Plaintiff's claimed inability to grip was based on subjective reports and that the ALJ considered a 2023 examination showing reduced range of motion and flexion in Plaintiff's knuckles, but "only mildly reduced grip strength bilaterally." (Id. at 10.) Defendant further contends that Plaintiff's frequent falls were attributable to biking accidents, rather than any foot abnormality, and suggests that these falls were cited to obtain appointments related to disability. (Id. at 10–11.) Finally, Defendant argues that

[4] The Court notes that its conclusions regarding the ALJ's analysis at step three are not a finding as to whether Plaintiff has satisfied any of the listings identified in 20 C.F.R. Pt. 404, Subpart P, Appendix 1. See, e.g., Smith-Grube v. Kijakazi, Case No. 2:21-cv-01574-BNW, 2022 WL 2072573, at *5 (D. Nev. June 8, 2022) ("Importantly, the Court is not finding that Plaintiff has (or has not) satisfied any Listing, including Listing 1.04(A). The Court only finds that because the ALJ did not sufficiently explain his step-three findings (at any point in his decision), he erred.") The Court only concludes that because the ALJ did not sufficiently explain his step three findings in any part of the decision as a whole, that part of the decision amounts to harmful error that must be corrected on remand.

Plaintiff identifies no specific limitation omitted from the RFC and that the RFC already includes restrictions on fingering, feeling, exertion, and posture that account for his hand and foot issues. (Id. at 11.)

**2. Applicable law**

RFC refers to what the claimant can do in a work setting, despite the claimant's mental or physical limitations caused by impairments or related symptoms. 20 C.F.R. § 404.1545(a)(1); see also Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *1 (July 2, 1996) (providing that an RFC "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."). In assessing the claimant's RFC, the ALJ must consider all of the claimant's medically determinable impairments, including nonsevere medically determinable impairments. 20 C.F.R. § 404.1545(e). "[A]n ALJ must consider all relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) (quoting SSR 96-8p, 1996 WL 374184, at *5). Careful consideration must be given to "any evidence about symptoms 'because subjective descriptions may indicate more severe limitations or restrictions than can be shown by medical evidence alone.'" (Id.)

The RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. See 20 C.F.R. § 404.1546(c); Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (citing 20 C.F.R. § 404.1545) ("It is clear that it is the responsibility of the ALJ not the claimant's physician to determine residual functional capacity."). Where "the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict." Benton ex rel Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003); see also Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 603 (9th Cir. 1999) (holding that the ALJ was "responsible for resolving conflicts" and "internal inconsistencies" within physician's reports); Tommasetti v.

Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) ("the ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence"). In determining whether an ALJ committed error in assessing the RFC, the relevant inquiry is whether the medical evidence supports the ALJ's findings. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173–74 (9th Cir. 2008) (holding that the RFC assessment adequately captured restrictions when it was consistent with the concrete limitations in the medical opinions).

**3. Analysis**

Plaintiff argues that the ALJ erred by failing to account for the combination of his physical impairments, including his inability to grip and his abnormal, deformed foot. (J. Mot. at 9.) Defendant responds that the ALJ accounted for Plaintiff's impairments through the RFC's manipulative, exertional, and postural limitations. (Id. at 11.) The Court agrees with Plaintiff.

At step two, the ALJ determined that Plaintiff's "complex fracture of the upper extremity" was a severe impairment that significantly limited his ability to perform work activities. (AR at 20.) At step four, the ALJ determined that Plaintiff had the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he: can frequently climb ladders, ropes, and scaffolds; can frequently crawl, finger and feel bilaterally; can perform simple job instructions, simple tasks, and simple, unskilled work; can interact appropriately with coworkers and supervisors but cannot perform team work or collaborative work; and should not have interaction with the public. He can respond appropriately to supervision, routine work settings and situations and changes; he can appropriately ask questions, use judgment and make decisions.

(Id. at 22)

Plaintiff argues that the ALJ failed to address his crushed hands and resulting grip limitations. (J. Mot. at 9.) The record shows otherwise. The ALJ properly evaluated the relevant medical evidence regarding Plaintiff's hands and explicitly addressed Plaintiff's grip and heavy-lifting concerns. (See id. at 22–25.) Specifically, in assessing Plaintiff's RFC, the ALJ considered Dr. Juliane Tran's 2023 physical consultative examination and functional assessment. (Id. at 23, 25 (citing id. at 532–38).) Dr. Tran observed that

Plaintiff could put on and take off his socks and shoes at a reasonable pace and without pain. (Id.) She also noted mild carpal tunnel syndrome in the left hand, tenderness in the index finger, mild joint enlargement, reduced flexion and range of motion in both index-finger knuckles, no flexion at the fingertips, and mildly reduced bilateral grip strength. (Id.) Based on those findings, she opined that Plaintiff could lift up to twenty pounds occasionally and ten pounds frequently, with no postural, wrist, manipulative, or environmental limits other than frequent handling. (Id. at 538.) The ALJ found that opinion persuasive and added an even greater restriction by limiting Plaintiff to frequent crawling. (Id. at 25.)

The ALJ also found Dr. Pamela Ombres's functional assessment persuasive because it aligned with Dr. Tran's findings and was consistent with the record. (Id. at 24 (citing id. at 90–113).) The ALJ further addressed Plaintiff's reports and treatment notes describing an inability to grip or perform heavy lifting. (Id. at 24 (citing id. at 414, 578).) The ALJ found those reports generally persuasive and somewhat supported by the record but explained that they were not functional assessments and that Plaintiff could still grip during the consultative exam. (Id. at 24.) On that basis, the ALJ concluded that the evidence supported no more than light work with manipulative limitations. (Id. at 23–24.) The ALJ also noted Plaintiff's minimal treatment history and multiple exams showing normal extremities without edema and concluded that these findings did not support limitations beyond a light exertional level or the already included postural and manipulative restrictions. (Id.) Because the RFC reflects the hand limitations supported by the evidence, the Court finds that the ALJ sufficiently addressed Plaintiff's hand impairments and did not err in this portion of the RFC assessment.

Plaintiff further argues that the ALJ failed to consider his foot impairments *in combination* with his hand impairments when formulating the RFC. (J. Mot. at 9.) Although the ALJ adequately addressed Plaintiff's hand impairments, he did not discuss Plaintiff's foot impairments in the RFC analysis. At step two, the ALJ found that Plaintiff had right foot pain, mild allodynia, dysesthesia, and hammertoe, but noted there

was "little treatment for this overall." (AR at 20.) The ALJ also found that Plaintiff's left knee cellulitis resolved quickly with antibiotics and that Plaintiff could bike and walk. (Id.) The ALJ then determined that Plaintiff's right foot pain/hammertoe and left knee cellulitis were nonsevere impairments that did not significantly limit Plaintiff's ability to perform basic work activities. (Id.) That analysis was sufficient for step two; however, the ALJ omitted any discussion of these nonsevere foot impairments from the RFC assessment. (See id. at 22–25.)

The Social Security regulations require an ALJ to "consider the limiting effects of all [claimant's] impairment(s), even those that are not severe, in determining [claimant's] residual functional capacity." 20 C.F.R. § 404.1545(e); see also Carmickle v. Comm'r of Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008). Even though a nonsevere impairment "standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim." SSR 96-8p, 1996 WL 374184, at *5. "For example, in combination with . . . an individual's other impairments, the limitations due to such a 'not severe' impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do." Id. An ALJ therefore errs if he *explicitly* neglects to consider a nonsevere limitation when assessing the RFC. See Hutton v. Astrue, 491 F. App'x 850, 850–51 (9th Cir. 2012). Although an ALJ is required to consider the limiting effects of all impairments, they are not "require[d] to inclu[de] every impairment in[] the final RFC." Medlock v. Colvin, 2016 WL 6137399, at *5 (C.D. Cal. Oct. 20, 2016); see also Burch v. Barnhart, 400 F.3d 676, 684 (9th Cir. 2005) (finding ALJ's decision not to include plaintiff's impairment in RFC determination was proper because there was no evidence plaintiff's impairment caused any functional limitations). Courts in the Ninth Circuit have remanded cases where the ALJ analyzed a mild or nonsevere impairment at step two but then provided no RFC analysis explaining how (or whether) that impairment was considered, especially in combination with other limitations. See, e.g., Smith v.

Colvin, 554 F. App'x 568, 569 (9th Cir. 2014) (finding error where the ALJ did not consider "the combination of Claimant's severe and non-severe physical impairments, in determining the RFC[,]" by not incorporating the limitation "created by Claimant's non-severe wrist impairment"); Sylvester H. v. Kijakazi, 2022 WL 4466717, at *7 (C.D. Cal. Sep. 26, 2022) (finding error where "the ALJ carefully analyzed the evidence of plaintiff's [nonsevere] mental impairments at step two, but omitted any further analysis in formulating the RFC."); Frary v. Comm'r of Soc. Sec. Admin., 2021 WL 5401495, at *10–12 (E.D. Cal. Nov. 17, 2021) (compiling case law finding error due to ALJ's failure to consider nonsevere impairments in crafting the RFC); Goodman v. Berryhill, No. C16-285-JCC, 2017 WL 2610043, at *5 (W.D. Wash. Jun. 16, 2017) (finding error where the ALJ did not discuss plaintiff's nonsevere shoulder impairment and headache symptoms, opinions and medical findings in evaluating the RFC).

Here, the ALJ was not required to include specific foot-related limitations in the final RFC, but he erred by failing to assess the nonsevere foot impairment identified at step two, even briefly, in the RFC discussion. (AR at 22–25). At the outset of step four, the ALJ stated that he considered "all symptoms" and "the medical opinion(s) and prior administrative medical finding(s)" in determining RFC. (AR at 22.) But beyond that boilerplate statement, the decision contains no analysis or explanation of how Plaintiff's foot limitations factored into the RFC determination or why they were excluded. (See id. at 22–25); see Gates v. Berryhill, 2017 WL 2174401, at *2–3 (C.D. Cal. May 16, 2017) ("[T]he 'consideration' requirement is met if the ALJ 'actually reviews the record and specifies reasons supported by substantial evidence for not including the non-severe impairment.' . . . It is not sufficient, however, for the ALJ to merely rely on boilerplate language."). Although the ALJ referenced Dr. Resnick's right foot imaging at step two and Plaintiff repeatedly reported foot and toe problems during the alleged disability period, the ALJ did not discuss those records in the RFC analysis. (AR at 20, 22–25; see id. at 529–31 (containing Dr. Resnick's imaging impressions); see also id. at 420–22, 437–38, 487–92, 493–95 (containing VCC treatment notes and records from 2018 to

2022 regarding foot and toe issues).) The Court therefore cannot determine whether the ALJ considered Plaintiff's nonsevere right-foot pain and hammertoe in combination with his other impairments, including his severe hand impairment. See SSR 96-8p, 1996 WL 374184, at *5. The RFC analysis is consequently unsupported by substantial evidence.

Defendant argues that the RFC's fingering, feeling, exertional, and postural restrictions already account for Plaintiff's foot impairment in combination with his hand impairment. (J. Mot. at 11.) But the decision does not show how the ALJ reached that conclusion because it never discusses Plaintiff's foot impairment, either alone or in combination with Plaintiff's hand impairment, in the RFC analysis. (AR at 22–25); see Diane E.Z. v. Kijakazi, 2023 WL 7301969, at *5 (C.D. Cal. Nov. 6, 2023) ("[H]aving found the existence of an impairment that mildly limits a claimant in some way, the ALJ does have to show his work as to why that limitation has no bearing on the RFC."). Accordingly, the ALJ erred by failing to consider Plaintiff's nonsevere foot impairment in the RFC determination.

The Court finds that the ALJ's error was not harmless. An error is harmless only if it is inconsequential to the ultimate nondisability determination or the Court can reasonably discern the agency's path. See Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014). Here, the ALJ did not address Plaintiff's nonsevere foot impairments, including Dr. Resnick's imaging and the VCC treatment notes, when assessing the RFC. The Court therefore cannot determine whether consideration of this evidence would have changed the RFC or the step-five finding. This omission is material because the ALJ found Plaintiff unable to perform past relevant work, and the VE testified that limiting Plaintiff to occasional, rather than frequent, fine manipulation would preclude all identified jobs. (AR at 48–50); see also Aida I. v. Saul, 2020 WL 434319, at *5 (S.D. Cal. Jan., 28, 2020) ("[T]he Court cannot determine how the VE would have testified had the specific mild functional limitations to which [the] [doctor] had opined been included in the hypotheticals posed.") Because even a modest change to

the RFC could change the disability determination, the Court cannot conclude that the ALJ's omission of Plaintiff's nonsevere limitations was inconsequential.

The Court therefore **RECOMMENDS** that the District Judge find that the ALJ failed to consider Plaintiff's nonsevere impairments in combination with his severe impairments when assessing the RFC and remand the case for further proceedings on this basis.

### C. The ALJ Properly Discounted Plaintiff's Subjective Symptom Testimony

#### 1. Parties' arguments

Plaintiff argues that the ALJ failed to provide specific, clear, and convincing reasons to discount his subjective symptom testimony. (See J. Mot. at 11–12.) Plaintiff contends that the ALJ did not identify the treatment evidence underlying his decision to discount Plaintiff's subjective symptom testimony and instead left the Court to speculate about what treatment would be relevant or sufficient. (Id. at 12.) Plaintiff therefore argues that the ALJ did not adequately support his decision to discount Plaintiff's statements. (Id.)

Defendant responds that the ALJ properly evaluated Plaintiff's alleged symptoms. (See id. at 13–15.) Defendant argues that the ALJ reasonably discounted Plaintiff's statements because they "were contradicted by limited treatment, failure to follow up and normal findings." (Id. at 13.) Defendant further maintains that the ALJ properly weighed Plaintiff's allegations against the objective medical evidence and that substantial evidence supports the ALJ's interpretation of the record. (Id. at 14–15.)

#### 2. Applicable law

The Ninth Circuit has established a two-part test for evaluating a claimant's allegations regarding subjective symptoms. See Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017); see also SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). First, the ALJ determines whether there is "objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged." Trevizo, 871 F.3d at 678 (quoting Garrison v. Colvin, 759 F.3d 995, 1014–15 (9th Cir.

2014)). Second, if a claimant presented such evidence, and there is no evidence of malingering, the ALJ may reject the claimant's statements about the severity of the claimant's symptoms "only by offering specific, clear and convincing reasons for doing so." (Id.)

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015). "[A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." (Id. at 489.) Instead, the ALJ must identify the testimony regarding the claimant's symptoms that the ALJ finds not credible, and explain what evidence undermines the claimant's testimony. See Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) (citing Treichler, 775 F.3d at 1102); see also Burrell v. Colvin, 775 F.3d 1133, 1139 (9th Cir. 2014) (finding error where the ALJ "never connected the medical record" to the claimant's testimony, and did not make "a specific finding linking a lack of medical records to [the claimant's] testimony about the intensity of [her symptoms]"); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (providing that the ALJ's reasons for discounting a claimant's testimony must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony").

"Because symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the ALJ considers "all of the evidence presented," including information about the claimant's prior work record, statements about symptoms, evidence from medical sources, and observations by the Agency's employees and other individuals. See 20 C.F.R. § 404.1529(c)(3); SSR 16-3p, 2016 WL 1119029. In addition, the ALJ may consider other factors, such as the claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of

any medication taken to alleviate pain; treatment; and any other measures to relieve pain. See 20 C.F.R. § 404.1529(c)(3); SSR 16-3p, 2016 WL 1119029.

**3. Analysis**

The parties do not dispute the ALJ's findings that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (AR at 23; see also J. Mot. at 11–15.) Accordingly, the first prong of the ALJ's inquiry regarding Plaintiff's subjective symptoms is satisfied.

Turning to the second prong of the ALJ's inquiry, neither party alleges that the ALJ found Plaintiff was malingering. (See generally J. Mot.) The Court therefore is required to determine whether the ALJ identified which of Plaintiff's subjective allegations of impairment he discounted, and whether the ALJ provided specific, clear, and convincing reasons for doing so. See Brown-Hunter, 806 F.3d at 489; Lambert, 980 F.3d at 1277.

The ALJ summarized Plaintiff's testimony as follows:

> The claimant alleged his impairments affect his ability to walk, climb, lift, carry, use his hands, concentrate, get along with others, and complete tasks (B6E; Testimony). More specifically, he testified he can lift no more than 8 pounds with his right hand and less with his left. He said he can sit 20 to 30 minutes at a time and stand or walk for 10 to 15 minutes at a time. He reported pain in his left knee. He added he has to elevate his left knee so that it does not drain or swell. He reported he needs pins inserted and physical therapy, but he is not ready for this. Though he has pain in his hands, he testified he can tie his shoes, though it takes him extra time. He said he gets numbness and tendinitis in his hands, where a piece of paper becomes too heavy. Mentally, he said his schizophrenia is not covered by insurance (Testimony). He said he used to hear voices but does not really anymore (Testimony). The claimant said he has excessive worry and feelings of worthlessness (B6E/5).

(AR at 23.)

The ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this

decision." (Id.) The ALJ then discounted Plaintiff's subjective symptom testimony, citing the following reasons: (1) the objective medical evidence was inconsistent with Plaintiff's allegations of disabling symptoms and limitations, given "generally normal exams," and (2) Plaintiff had "little treatment overall." (See id. at 23–26.)

The Court can only assess the reasoning the ALJ provided in his decision. See Revels, 874 F.3d at 654 (stating that a court may consider "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground which [he or she] did not rely"); Garrison, 759 F.3d at 1010 (same). The Court will therefore examine the validity of the ALJ's stated reasons for discounting Plaintiff's testimony.

**a. Inconsistency with medical evidence and normal exams**

The ALJ discounted Plaintiff's subjective symptom testimony because Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms were inconsistent with the medical evidence. (AR at 23.) Generally, the ALJ may not reject the claimant's subjective complaints based *solely* on a lack of medical evidence to fully corroborate the alleged severity of pain. Burch, 400 F.3d at 680. However, "when objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." Smartt v. Kijakazi, 53 F.4th 489, 498 (9th Cir. 2022) (explaining that Burch does not forbid the ALJ from using inconsistent objective medical evidence in the record to discount subjective symptom testimony). Contradiction of the claimant's subjective complaints with the medical record is a sufficient basis for rejecting the claimant's subjective testimony. See Carmickle, 533 F.3d at 1161. The ALJ must identify "specific, clear, and convincing examples" that contrast the claimant's "subjective . . . testimony with objective medical evidence." Smartt, 53 F.4th at 499. "The Ninth Circuit has found that evidence documenting intact limb strength demonstrates greater functionality than claimed." Peters v. Comm'r of Soc. Sec. Admin., Case No. 2:23-cv-01924 AC, 2024 WL 4225839 at *5 (E.D. Cal. Sep. 18, 2024) (citing Osenbrock v. Apfel, 240 F.3d 1157, 1166 (9th Cir. 2001); Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999); Macri v. Chater,

93 F.3d 540, 544 (9th Cir. 1996)); see also Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007) (upholding the ALJ's findings that the claimant's subjective complaints of pain were contradicted by normal examination findings); Ryan L. v. O'Malley, Case No.: 23-cv-338-DDL, 2024 WL 1283812, at *6 (S.D. Cal. Mar. 26, 2024) (finding that the ALJ properly discounted plaintiff's subjective symptom testimony, where the ALJ found that "the consistently normal findings on physical examinations over a period of years rendered [p]laintiff's allegations that he could not sit upright, walk 'down the street,' or use his arms, hands or fingers without pain less credible.").

Here, Plaintiff testified that hand pain, numbness, and tendinitis limited his ability to lift and carry objects. (AR at 42, 45–46.) He also alleged that his knee condition limited his ability to sit, stand, and walk and required him to elevate and drain his leg several times daily. (Id. at 39–40.) The ALJ found that the record did not support the degree of physical limitation Plaintiff alleged. (See id. at 23–26.) The ALJ cited four VCC examinations showing normal extremities without edema. (Id. at 23 (citing id. at 417 (containing August 30, 2022, examination notes by Dr. Trushna Tran), 470 (containing March 18, 2020, examination notes by N.P. Rory Skopek), 480 (containing October 21, 2019, examination notes by N.P. Rory Skopek), 484 (containing October 5, 2019, examination notes by Dr. Trushna Tran)).) The ALJ also relied on Dr. Juliane Tran's consultative examination, which showed that Plaintiff could put on and remove his socks and shoes without pain and at a reasonable pace. (Id. at 23, 25 (citing id. at 532–38).) Although Dr. Juliane Tran observed mild carpal tunnel syndrome, reduced range of motion in both index fingers, and mildly reduced grip strength, she opined that Plaintiff could perform light work with frequent handling. (Id.) The ALJ further considered VCC notes that Plaintiff could not grip or lift heavy objects but found that a limitation to light work with postural and manipulative restrictions accommodated those findings. (Id. at 24–25 (citing id. at 414, 578.) The ALJ found these notes generally persuasive and concluded that Plaintiff's ability to grip during the consultative

examination supported light work with manipulative restrictions, an exertional level Plaintiff's representative also accepted. (Id. at 24 (citing id. at 389).)

Plaintiff also testified that schizophrenia and intermittent psychiatric medication caused difficulty concentrating, interacting with others, and completing tasks. (Id. at 40–41, 45.) The ALJ found that the record supported some mental limitations but did not support the degree of limitation Plaintiff alleged. (See id. at 23–26.) The ALJ cited multiple VCC examinations documenting normal mood, affect, insight, judgment, and memory. (Id. at 24 (citing id. at 439 (containing May 21, 2021, examination notes by N.P. Nicholas Kahl), 444 (containing March 23, 2021, examination notes by N.P. Amanda Santiago), 470 (containing March 18, 2020, examination notes by N.P. Rory Skopek), 480 (containing October 21, 2019, examination notes by N.P. Rory Skopek), 489 (containing October 2, 2019, examination notes by Dr. Enrique Boquin)).) The ALJ also relied on Dr. Aparna Dixit's consultative examination, which showed that Plaintiff performed well on cognitive testing, had fair insight and judgment, could follow a three-step command, and could perform serial calculations and simple math. (Id. at 24 (citing id. 523, 525–26).) Although Dr. Dixit identified mild-to-moderate limitations in performing detailed tasks and maintaining pace and persistence, she found no limitation in attention or repetitive cognitive activity. (Id. at 26 (citing id. at 526.) The ALJ also considered evidence of hallucinations, anxiety, irritability, and psychiatric treatment, but found that several mental-status abnormalities were attributable to Plaintiff's methamphetamine-use disorder. (Id. at 24 (citing id. at 403–04, 505, 524–25).) Finally, the ALJ found Dr. Gross's opinion limiting Plaintiff to one-to-two-step instructions inconsistent with Plaintiff's normal mental-status examinations and reported ability to perform chores and grocery shop. (Id. at 25–26 (citing id. at 44, 331–54, 439, 444, 470, 480, 489, 523, 525).)

The ALJ's determination was therefore supported by substantial evidence in the record. Accordingly, the ALJ provided a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's subjective symptom testimony.

**b. Limited treatment**

The ALJ also discounted Plaintiff's subjective symptom testimony based on his limited, or conservative, treatment. (Id. at 23–25.) The ALJ noted that Plaintiff's hand fractures from the 2010 motor-vehicle accident were treated with splinting and that he received little additional treatment for his alleged hand limitations. (Id. at 23.) The ALJ further noted that Plaintiff received little treatment for his right-foot complaints, experienced improvement in his knee and cellulitis symptoms after he eventually took prescribed antibiotics, and declined psychiatric counseling despite multiple referrals. (Id. at 20, 24.)

The treatment a claimant seeks and receives is an important indicator of the intensity and persistence of the claimant's symptoms. See 20 C.F.R. § 404.1529(c)(3)(v). ALJ's may consider "unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment" as a factor in evaluating a claimant's subjective testimony. See Tommasetti, 533 F.3d at 1039. Further, evidence of conservative treatment is sufficient to discount a claimant's testimony regarding the severity of the claimant's impairment. See Tommasetti, 533 F.3d at 1039–40; Parra, 481 F.3d at 750–51. Nevertheless, conservative treatment is not a proper basis for discounting a claimant's symptom allegations where there is no indication that more aggressive treatment options are appropriate or available. See Carmickle, 533 F.3d at 1162; Lapeirre-Gutt v. Astrue, 382 F. App'x 662, 664 (9th Cir. 2010).

Plaintiff argues that the ALJ failed to identify more aggressive treatment options. (J. Mot. at 12.) However, the record supports the ALJ's reliance on Plaintiff's limited treatment and failure to pursue more aggressive treatment. Regarding his hands, Plaintiff declined both surgery and physical therapy, and he testified that he did not take pain medication for hand symptoms. (AR at 23, 47.) These were more aggressive treatment options beyond the splinting he received after the 2010 accident. (Id.) Plaintiff also received limited treatment for his right-foot complaints. Although Plaintiff completed one recommended foot X-ray in 2019, the X-ray showed no fracture or other significant

abnormality. (See id. at 437–38, 487–92, 493–95.) Providers recommended additional imaging and referred Plaintiff to podiatry, but Plaintiff failed to pursue either recommendation. (Id. at 422, 439.) Finally, Plaintiff declined surgery and did not take prescribed antibiotics for several months to treat his knee condition and cellulitis. (Id. at 573.) When Plaintiff eventually took the antibiotics, his condition improved significantly. (Id. at 570); see Wellington v. Berryhill, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability.").

The record also supports the ALJ's consideration of Plaintiff's mental-health treatment. Although Plaintiff alleged severe psychiatric symptoms, he declined counseling because it "angered him" and did not follow through on multiple psychiatric referrals. (AR at 24 (citing id. at 417, 433, 524).) The ALJ could reasonably consider this failure to pursue recommended psychiatric treatment when evaluating the alleged severity of Plaintiff's symptoms. See Tommasetti, 533 F.3d at 1039. Thus, the record shows that Plaintiff declined or failed to pursue more aggressive treatment options, including surgery, physical therapy, pain medication, psychiatric counseling, additional diagnostic imaging, podiatric evaluation, and prescribed antibiotics. (See AR at 42, 47, 417, 422, 430, 433, 439, 471, 573.) The Court therefore finds that Plaintiff's limited, conservative treatment provided a clear and convincing reason to reject Plaintiff's testimony. Even if this rationale were invalid, any error would be harmless because the ALJ provided another valid, independently sufficient reason supported by substantial evidence that Plaintiff's allegations were inconsistent with the objective medical evidence and normal examination findings. See Reyes v. Berryhill, 716 F. App'x 714, 714 (9th Cir. 2018) (finding that the ALJ provided valid reasons for discounting claimant's testimony "[a]ny error in other reasons provided by the ALJ was harmless"). Accordingly, the Court concludes that the ALJ did not err in rejecting Plaintiff's subjective symptom testimony.

**4. Conclusion**

The ALJ provided two reasons for discounting Plaintiff's subjective symptom testimony. Both reasons are supported by substantial evidence. The Court therefore **RECOMMENDS** that the District Judge find that the ALJ provided clear and convincing reasons, supported by substantial evidence in the record, for rejecting Plaintiff's subjective symptom testimony.

## VII. REMAND

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an award of benefits. See, e.g., Stone v. Heckler, 761 F.2d 530, 533 (9th Cir. 1985) (decision of whether to remand for further proceedings or remand for immediate payment of benefits is within the discretion of the reviewing court). Whether an action is remanded for further proceedings or for an award of benefits depends on the likely utility of additional proceedings. Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000). In determining whether an award of benefits is warranted, the Court conducts the "three-part credit-as-true" analysis. Garrison, 759 F.3d at 1020. Under this analysis the Court considers whether: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceeding would serve no useful purpose; and (3) if the improperly discredited evidence is credited as true, the ALJ would be required to find the claimant disabled on remand. See Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015).

Even if all the requisites are met, however, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" Garrison, 759 F.3d at 1021. "Serious doubt" can arise when there are "inconsistencies between [the claimant's] testimony and the medical evidence," or if the Commissioner "has pointed to evidence in the record the ALJ overlooked and explained how that evidence casts into serious doubt" whether the claimant is disabled under the Act. Dominguez, 808 F.3d at 407 (quoting Burrell, 775 F.3d at 1141 (internal quotations omitted)). The first requirement is met here based on the ALJ's harmful legal

errors. As discussed above, the ALJ erred in evaluating Plaintiff's mental impairments in paragraph C and failed to consider Plaintiff's foot and hand impairments together in the RFC.

As for the second requirement, the Ninth Circuit has held that remanding for further proceedings rather than for an immediate payment of benefits serves a useful purpose where "the record has [not] been fully developed [and] there is a need to resolve conflicts and ambiguities." Treichler, 775 F.3d at 1101 (internal quotations and citations omitted). "When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." Leon v. Berryhill, 880 F.3d 1041, 1045 (9th Cir. 2018) (citing id. at 1099). "The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court." Trevizo, 871 F.3d at 682 (quoting Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987)). The Court concludes that the record is sufficiently ambiguous, making remand for an immediate payment of benefits inappropriate. The ALJ's failure to adequately explain his paragraph C finding and failure to discuss Plaintiff's hand and foot limitations in combination in the RFC deprives the Court of the ability to determine whether his conclusions were supported by substantial evidence. Accordingly, this case should be remanded for further administrative proceedings to allow for proper consideration of the evidence of record and to conduct any further necessary proceedings.

The Court concludes that the "rare circumstances that result in a direct award of benefits are not present in this case." Leon, 880 F.3d at 1047. Where—as happened here—the ALJ fails to properly develop the record with regard to a claimant's impairments, further administrative proceedings could remedy the ALJ's errors, and remand is appropriate. See, e.g., Jennifer A., 2024 WL 400183, at *9. Accordingly, the Court **RECOMMENDS** that this case be remanded for further proceedings.

## VIII. CONCLUSION & RECOMMENDATION

For the reasons set forth above, the Court **RECOMMENDS** that the Commissioner's decision be **REVERSED** and this matter be **REMANDED** for further administrative proceedings consistent with this Report and Recommendation.

Additionally, **IT IS ORDERED** that no later than **September 18, 2026**, any party to this action may file written objections with the Court and serve a copy on all parties. The document shall be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **September 25, 2026**. The parties are advised that failure to file objections within the specified time may waive the right to raise these objections on appeal of the Court's order. See Turner v. Duncan, F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: September 4, 2026

Honorable Lupe Rodriguez, Jr.
United States Magistrate Judge